# United States Court of Appeals for the Federal Circuit

---

**ROKSOLIANA DACHNIWSKYJ,**
*Petitioner,*

**v.**

**OFFICE OF PERSONNEL MANAGEMENT,**
*Respondent,*

**AND**

**THERESA DACHNIWSKYJ,**
*Intervenor.*

---

2011-3158

---

Petition for review of the Merit Systems Protection Board in No. CH0831100439-I-1.

---

Decided: April 2, 2013

---

JANICE L. BOBACK, Anderson & Boback, of Chicago, Illinois, argued for petitioner.

HILLARY A. STERN, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respond-

ent.  With her on the brief were STUART F. DELERY, Acting
Assistant Attorney General, JEANNE E. DAVIDSON, Direc-
tor, and KIRK T. MANHARDT, Assistant Director.

DMYTRO KURYWCZAK, Oleksiuk & Associates, P.C., of
Palatine, Illinois, argued for intervenor.

———————————

Before LOURIE, PROST, and WALLACH, *Circuit Judges*.

WALLACH, *Circuit Judge*.

Roksoliana Dachniwskyj ("Roksoliana") appeals the
April 19, 2011 final order of the Merit Systems Protection
Board ("Board") affirming the initial decision of an Ad-
ministrative Judge who reversed the decision of the Office
of Personnel Management ("OPM") and granted Theresa
Dachniwskyj ("Theresa") survivor annuity benefits.
*Dachniwskyj v. Office of Pers. Mgmt.*, CH-0831-10-0439-I-
1 (M.S.P.B. Apr. 19, 2011) ("Final Op."). Because OPM's
annual notice was insufficient to inform Myron
Dachniwskyj ("Myron") of his rights and obligations with
respect to electing a spouse to receive a survivor's annuity
within two years of divorce, and because the Board's
award to Theresa was not supported by substantial
evidence, the decision is reversed.

## BACKGROUND

Theresa was married to Myron at the time of his
retirement from the Federal Government on October 1,
1989. Myron elected to receive a reduced annuity during
his lifetime, and named Theresa to receive a survivor
annuity if he predeceased her.

On January 16, 1998, Myron and Theresa divorced.
Weeks later, Myron married Roksoliana. During the
years that followed, Myron received annual notices from
OPM explaining that "if he wanted to provide survivor
annuity benefits to a spouse that he married after retire-
ment, he had to send a signed request to OPM within 2

years after the date of [his] marriage." Final Op. at 4 (internal quotation marks and citation omitted); *see* App'x 57. Four years after marrying Roksoliana, Myron sent a letter to OPM requesting survivor annuity benefits for Roksoliana. OPM responded with two letters, both dated June 29, 2002: The first letter denied Myron's request because it was not submitted within two years of his marriage to Roksoliana. The second letter instructed Myron to send a certified copy of his divorce decree in order to change or eliminate the survivor election he previously made.

Myron responded on January 25, 2006 with a written request to change his survivor election stating: "Please, remove name Theresa from the system and put in name Roksoliana Dac[h]niwksyj, because [I have] been married [to] her since January 31, 1998." App'x 36. He also provided the divorce decree terminating his marriage to Theresa and the marriage certificate documenting his marriage to Roksoliana.

On March 27, 2006, OPM responded, asking Myron for clarification of whether he wanted to transfer the full survivor benefits from his former spouse to his current spouse. Myron responded with another signed request to transfer "the survivor benefits" to Roksoliana, his current spouse. OPM sent Myron a written notification on April 13, 2006, indicating that his election to transfer full survivor benefits from his former spouse to his new spouse was effective immediately.

Myron died on August 11, 2009. Thereafter, Roksoliana applied for survivor annuity benefits. OPM granted her application and began paying her benefits.

Theresa also applied for survivor annuity benefits, which OPM denied. In particular, OPM found that the divorce decree did not order survivor annuity benefits for her, that she was no longer considered a current spouse, and that there was no record that Myron elected to pro-

vide survivor annuity benefits for Theresa as a former spouse at any time between the date of the divorce and the date of his death.

Theresa appealed OPM's decision to the Board. The Administrative Judge notified Roksoliana of her right to participate in the appeal as an intervenor because her interests might be affected. OPM provided the Board with the administrative record concerning Theresa's application for benefits, but, for unknown reasons, did not include the record concerning Roksoliana's request for benefits, nor the communications between Myron and OPM from 2002 and 2006.

On July 16, 2010, the Administrative Judge issued an initial decision granting Theresa survivor annuity benefits. The Administrative Judge found that the annual notices OPM sent to Myron were insufficient to meet its statutory obligations because OPM failed to inform him that his pre-divorce election of a survivor annuity was automatically voided by his divorce from Theresa. However, the Administrative Judge held that, based upon Myron's continued receipt of a reduced survivor annuity "and his failure to take any steps to notify OPM of his divorce or his remarriage . . . it was reasonable for [Myron] to have believed he was not required to do anything else to provide his ex-wife with an annuity." App'x 58. Accordingly, the Administrative Judge ordered OPM to grant Theresa's application for the survivor annuity. The initial decision said nothing about Roksoliana's rights.

Both OPM and Roksoliana appealed the initial decision to the full Board for review. Along with its petition for review, OPM included several relevant documents it had previously failed to produce. These included Myron's two letters from OPM in 2002 requesting survivor annuity benefits for Roksoliana, his 2006 letter requesting to change his survivor election to Roksoliana and its accom-

panying divorce decree, and his request to transfer full survivor annuity benefits to Roksoliana.

In its final decision the Board affirmed the initial decision with respect to Theresa's claim for benefits. The Board agreed with the Administrative Judge that the annual notice was insufficient to notify Myron of the effect of a divorce on the survivor annuity previously designated for Theresa, his former spouse. The Board further found that Myron intended for Theresa to receive the survivor annuity. According to the Board, the 2002 and 2006 communications between Myron and OPM did not contradict this intent, because those communications only discussed replacing Theresa with Roksoliana as the beneficiary, not removing Theresa. Final Op. at 3.

With respect to Roksoliana's entitlement to a survivor annuity, the Board found OPM's annual notice was adequate to advise Myron of his rights and obligations, and that Roksoliana was barred by Myron's failure to timely request survivor benefits. *Id.* at 4. Roksoliana timely appealed to this court.[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review in an appeal from the Board is limited. This court must uphold a decision of the Board unless it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c); *see Hernandez v. Office of Pers. Mgmt.*, 450 F.3d 1332, 1334 (Fed. Cir. 2006).

---

[1] Both Petitioner, Roksoliana, and Respondent, OPM, request the Board's decision be reversed. The court granted Theresa's motion for leave to intervene. *See Dachniwskyj v. Office of Pers. Mgmt.*, 2011 U.S. App. LEXIS 17972 (Fed. Cir. Aug. 26, 2011).

A federal employee who qualifies for a retirement annuity may elect to receive a reduced annuity during his lifetime to provide a survivor annuity for a spouse or former spouse if the annuitant predeceases the spouse or former spouse. 5 U.S.C. § 8339(j).   Divorce generally terminates a prior election of spousal survivor benefits. 5 U.S.C. § 8339(j)(5)(A)(ii).   An annuitant who wishes to reinstate the survivor annuity for a former spouse following a divorce must re-elect a survivor annuity within two years of the divorce.[2] 5 U.S.C. § 8339(j)(3); 5 C.F.R. § 831.631(b)(5).   Additionally, an annuitant who remarries after divorce may elect a survivor annuity for the new spouse within two years of remarriage. 5 U.S.C. § 8339(j)(5)(C)(i).

OPM is statutorily obligated to inform each annuitant annually of his right to elect a survivor annuity. Pub. L. No. 95-317, 92 Stat. 382 (1978) *as amended by* Reorganization Plan No. 2 of 1978, § 102, 92 Stat. 3783 (1978) (codified at 5 U.S.C. § 8339 note (1988)).   When this notice is inadequate to inform the annuitant of his rights and obligations in electing a beneficiary for his survivor annuity "and the annuitant's conduct is consistent with his having made the election at issue," OPM should allow the annuitant to make the relevant election or, if the annuitant is deceased, grant the survivor benefits as if the deceased had made a timely election. *Brush v. Office of Pers. Mgmt.*, 982 F.2d 1554, 1560 (Fed. Cir. 1992).   For instance, this court has held that "[a] former spouse may receive survivor annuity benefits even without an affirmative election by the annuitant if (1) the annuitant did not receive the required notice, and (2) there is evidence

---

[2]   Alternatively, a divorce or annulment decree may require that the former spouse be awarded the survival annuity benefits. 5 U.S.C. § 8341(h)(1).  No such provision was made in Myron and Theresa's divorce decree.

sufficient to show that the retiree indeed intended to provide a survivor annuity for the former spouse." *Hernandez*, 450 F.3d at 1334-35 (citations and quotations omitted). Where OPM fails to comply with the notice requirement, and there is evidence of the annuitant's intent, the Board has either ordered OPM to allow the annuitant to make the election outside the statutory time limits "'or grant the survivor benefits as if the deceased had made a timely election.'" *Simpson v. Office of Pers. Mgmt.*, 347 F.3d 1361, 1366–67 (Fed. Cir. 2003) (quoting *Brush*, 982 F.2d at 1560).

In *Simpson*, this court held that OPM's annual notice was insufficient to notify an annuitant of his rights and obligations with respect to electing a former spouse since it failed to inform the annuitant that a pre-divorce election is automatically terminated and he must make a new election to provide a survivor annuity for a former spouse. 347 F.3d at 1364–65. Here, there is no dispute that the notices sent to Myron failed to inform him that his divorce voided his prior election of spousal survivor benefits. Accordingly, OPM's annual notice was inadequate to notify Myron of his rights and obligations with respect to electing his former spouse, Theresa, to receive the survivor annuity.

The notice was also insufficient to inform Myron of his rights and obligations with respect to electing his new spouse, Roksoliana, to receive the survivor annuity, and the Board erred in holding otherwise. The notice explains only that an annuitant may request a reduced annuity to provide survivor benefits for a spouse married before or after retirement within a specified period of time. The notice suffers from the same flaw recognized in *Simpson*; it failed to inform Myron that his initial election was terminated by virtue of his divorce. Due to this failure, the notice was inadequate to inform Myron of the requirement to make a new election following his divorce

from Theresa in order to provide a survivor annuity for his chosen beneficiary.

In short, the notice was insufficient to notify Myron of his rights and obligations with respect to electing either his former spouse, Theresa, or his new spouse, Roksoliana. Accordingly, the next step is to consider evidence of Myron's intent and whether the Board's grant of benefits to Theresa is supported by substantial evidence. *See Brush*, 982 F.2d at 1560.

In *Simpson* the court determined that the annuitant's continued acceptance of a reduced annuity following a divorce, standing alone, adequately demonstrated the annuitant's intent to provide a survivor annuity for a former spouse. 347 F.3d at 1367-68; *see also Hairston v. Office of Pers. Mgmt.*, 318 F.3d 1127, 1130–31 (Fed. Cir. 2003). However, in *Hernandez*, the court found that the annuitant's continued acceptance of a reduced annuity was insufficient in light of other evidence showing he had taken affirmative steps to discontinue survival benefits for his former spouse after the divorce. 450 F.3d at 1335. The court stated that "[s]uch actions are fundamentally inconsistent with the intent to continue to provide such benefits." *Id.*

Here, the Board found Myron had the intent to provide a survivor annuity to his former spouse, Theresa. In doing so, the Board improperly discounted the evidence and actions Myron took that demonstrate his intent to provide a survivor annuity for Roksoliana, not Theresa. The Board determined that the 2002 and 2006 communications between Myron and OPM "discussed *replacing*" Theresa as the designated beneficiary with Roksoliana. Final Op. at 3 (emphasis in original). The Board stated that "[t]here is only one document in the record that *unconditionally* requests the appellant be *removed* as beneficiary," but it "bears no date, does not indicate if there were additional pages that may have conditioned

the request, and bears no proof that it was ever submitted to OPM." *Id.* (emphasis in original). The Board concluded that because it could not "confirm the veracity of this document, and [Myron] did not choose to submit this document to OPM, we cannot interpret it as an expression of his intent to unconditionally revoke his election of [Theresa] as his beneficiary." *Id.*

The Board's reasoning is flawed. As noted above, it is true that "'an employee's continued acceptance of a reduced annuity following divorce, standing alone, adequately demonstrate[s] that employee's intent to provide a survivor annuity for the former spouse.'" *Hernandez*, 450 F.3d at 1335 (quoting *Wood v. Office of Pers. Mgmt.*, 241 F.3d 1364, 1368 (Fed. Cir. 2001)) (alteration in original). Here, however, Myron's continued acceptance of a reduced annuity does not stand alone. He took multiple affirmative steps to replace his former spouse with his current spouse as beneficiary. Even ignoring the document the Board concluded could not be verified, Myron's actions are completely inconsistent with the intent to continue to provide benefits for his former spouse. In 2006, Myron submitted a request to OPM to change his beneficiary from Theresa to Roksoliana, providing his divorce decree from the former and marriage certificate to the latter. OPM requested clarification of his intent and Myron responded that he was electing to transfer survivor benefits to Roksoliana. OPM notified Myron that his election to transfer survivor benefits from Theresa to Roksoliana was effective immediately. We believe OPM's decisions to grant Roksoliana survivor annuity benefits and to deny Theresa survivor annuity benefits were correct. For these reasons, the Board's finding that Myron intended to provide Theresa with a survivor annuity is not supported by substantial evidence. That finding is reversed.

CONCLUSION

The Board's decision granting the survivor annuity to Theresa is reversed.

**REVERSED**